Clemens R. **SIERAKOWSKI,**
Plaintiff-Appellant,

v.

Caspar **WEINBERGER,** Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 73-2054.

United States Court of Appeals, Sixth Circuit.

Decided Oct. 18, 1974.

John R. Carney, Livonia, Mich., for plaintiff-appellant.

Ralph B. Guy, Jr., U. S. Atty., Michael D. Gladstone, Detroit, Mich., for defendant-appellee.

Before LIVELY and ENGEL, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

This is an appeal from an order of the United States District Court for the Eastern District of Michigan, Southern Division, granting summary judgment to the appellee, Caspar Weinberger, Secretary of Health, Education and Welfare.

On September 3, 1968, Clemens Sierakowski, appellant, had a motorcycle accident from which he suffered fractures of the left leg. Prior to his injury the appellant had been employed for about fifteen years as a structural iron worker. He had a wife and seven children. On February 3, 1969, the appellant made application to the Bureau of Disability Insurance of the Social Security Administration to qualify for a period of disability and disability benefits under the Social Security program. At that time his doctors advised him that it would be a year and a half before he could go back to work.

However, the appellant did go to work on May 25, 1969, as a timekeeper. He worked continuously in this and other jobs earning substantially more than one hundred forty dollars per month, an amount deemed to demonstrate ability to engage in substantial gainful activity. (20 CFR, Sec. 404.1534(b)). The appellant said that immediately upon going to work in May he called the Social Security Office and informed it of that fact. The office record indicates that on June 4, 1969, the appellant's wife telephoned and reported "that her husband had returned to a 'restricted job' as of May 23, 1969."

On July 7, 1969, the Bureau of Disability Insurance of the Social Security Administration found that the appellant was entitled to a period of disability commencing September 3, 1968. He did not know of this award of benefits until he received the first checks, in August, as he remembers. At that time he took the checks to the Dearborn office and advised the staff there that he had been working. He was told that the money was theirs, the family's, but they still did not spend it. When it was close to Christmas, he checked again with the Social Security office and was told, "No, the money is yours".

The appellant was notified on January 19, 1970 that his claim had been reviewed by the Division of Reconsideration of the Bureau of Disability Insurance and denied. Since he went back to work in May, 1969, his injury did not preclude him from engaging in substantial work activity for twelve months. For this reason it was held that the prior decision that he was entitled to disability insurance benefits was not correct. He was advised that he was overpaid by the benefits that he had received from April, 1969, through September, 1969, in the amount of $2,227.-20.

Upon request, a hearing was granted to the appellant by the Bureau of Hearings and Appeals of the Social Security Administration. The Hearing Examiner found that the appellant was under a disabling impairment which began on September 3, 1968, and that it was reasonably expected to continue for a period of not less than twelve months. He found that this disability actually ceased during the month of May, 1969.

The Hearing Examiner decided on May 26, 1971, that the appellant was entitled to a period of disability from September 3, 1968, to July 31, 1969, and to insurance benefits from April, 1969, to July, 1969, inclusive. Upon this decision the Examiner concluded that the appellant and his family had been overpaid for the months of August and September 1969. He further found that the appellant was without fault in receiving the payments but that repayment of the amount overpaid would not result in a financial hardship to him. He therefore concluded that the overpayment for August and September should not be waived.

On its own motion, the Appeals Council of the Social Security Administration reviewed the decision of the Hearing Examiner. It concluded from the evidence:

"Since he returned to work before 12 months had elapsed and in fact before any determination had been made on his claim, it then became apparent that his impairment had not precluded and could not be expected to preclude his engaging in substantial gainful activity for a continuous 12-month period as required by the Act. Therefore, the Appeals Council finds that the claimant was not under a 'disability' as defined in the Act and accordingly, was not entitled to a period of disability or to disability insurance benefits."

The appellant then filed a complaint in the District Court seeking judicial review and reversal of the decision of the Appeals Council. Under Section 405(g), Title 42, U.S.C., a final decision of the Secretary is subject to review in a civil action brought in the District Court. Both parties moved for summary judgment.

First, we consider a question of law as to the Interpretation of the term "disability" as defined in Sections 416(i) and 423(d), Title 42 U.S.C. It is defined substantially the same in both sections as follows:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Unless the appellant could establish disability as defined in each of these sections, he was not entitled to a period of disability under Sec. 416(i) or to benefits under Sec. 423(d).

The facts as to the injury and return to work are not in dispute. At the time of appellant's application for benefits and at the time of the award impairment from his injury was expected to last for more than twelve months. As a matter of fact some impairment did continue for more than twelve months. It is claimed on behalf of the appellant that it is not the inability to work that need last for twelve months, but rather the physical impairment must have lasted or be expected to last for a continuous period of not less than twelve months.

In Alexander v. Richardson, 451 F.2d 1185 (10th Cir.), cert. den., 487 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685, the Court held,

"Inability to engage in any gainful activity and the impairment which causes it cannot be separated. The two components of disability must exist at the same time."

While we agree with this construction of the Act,[1] we do not believe that it necessarily follows that Sierakowski was therefore disqualified from receiving benefits when it developed that he was able to return to some gainful activity before the twelve month period had expired. The result reached by the Secretary and by the District Court is to read into the statute a provision for the conditional payment of benefits, repayable

---

1. We thus reject the contrary interpretation urged upon us by appellants and adopted in

White v. Finch, 311 F.Supp. 307 (D.Mass. 1970).

where the expected duration does not develop, unless excused under Section 404(b). We find nothing in the statutory language to support such a view, and much in the legislative history to refute it. The statute plainly says that it permits benefits where the inability "can be expected to last for a continuous period of not less than 12 months." We conclude that by the use of the cited language the Congress established a prospective standard whereas the Secretary urges one governed by hindsight.

The intent of the 1965 amendments to the statutory definitions of disability contained in sections 416(i) and 423(d) was carefully expressed in the report accompanying the Senate bill which ultimately became the law:

> (a) Elimination of the long-continued and indefinite duration requirement from the definition of disability

> Under present law, disability insurance benefits are payable only if the worker's disability is expected to result in death or to be of long-continued and indefinite duration. The House bill would broaden the disability protection afforded by the social security program by providing disability insurance benefits for an insured worker who has been totally disabled throughout a continuous period of 6 calendar months. The committee believes that the House provision could result in the payment of disability benefits in cases of short-term, temporary disability. Under the House provision, for example, benefits could be paid for several months in cases of temporary disability resulting from accidents or illnesses requiring a limited period of immobility. *The committee believes, therefore, that it is necessary to require that a worker be under a disability for a somewhat longer period than 6 months in order to qualify for disability benefits.* As a result, the committee's bill modifies the House bill to provide for the payment of disability benefits for an insured worker who has been or can be expected to be totally disabled throughout a continuous period of 12 calendar months. (Disability insurance benefits would also be payable if disability ends in death during this 12-month period, provided the worker has been disabled throughout a waiting period of 6 calendar months prior to death.) The effect of the provision the committee is recommending is to provide disability benefits for a totally disabled worker even though his condition may be expected to improve after a year. As experience under the disability program has demonstrated, in the great majority of cases in which total disability continues for at least a year the disability is essentially permanent. Thus, where *disability has existed for 12 calendar months or more, no prognosis would be required. Where a worker has been under a disability which has lasted for less than 12 calendar months, the bill would require only a prediction that the worker's disability will continue for a total of at least 12 calendar months after onset of the disability.* (Emphasis added) S.Rep.No.404, 89th Cong., U. S.Code Cong. & Admin.News, pp. 1943, 2038–2039 (1965).

Here, there is no claim that the prediction of disability was reached in bad faith, or on insufficient evidence, or was in any way unreasonable when made on the evidence before the Administrator at the time of the decision. On the contrary, the Hearing Examiner was fully satisfied that the evidence justified the prediction itself, and in fact directed counsel for the claimant to press that point no further.[2] The Appeals Council

---

2. "HEARING EXAMINER: Well, actually Mr. Carney, I think it would be proper for me to tell you that the mere fact that an award was made in this case in the first instance by the Social Security Administration indicates to me that they consider that the condition of the Act had been met, and since that time, twelve months had not elapsed from the date of injury, that it had to be the alternative condition that they thought was met. That it was expected that the condition would last for a period of at least twelve months. So if you are trying to establish the medical means that there was an

also accepted this finding.[3] That the reasonably expected did not subsequently occur should, in our view, be treated as the shared good fortune of both the government and the claimant. It does not destroy the validity of the condition for eligibility, which we hold to be the existence of expectancy itself, independent of its fulfillment.

We recognize that the construction urged by the Secretary results perhaps in more certainty and is thus easier of application, but this does not, in our view, justify a departure from Congressional intent. Furthermore, that construction tends to penalize good faith and diligence. It takes little imagination to conclude that a claimant less motivated than plaintiff here would be sorely tempted to sit out the full twelve months if he knew that the law imposed such a forfeiture for an earlier return to gainful activity.[4]

We find nothing in the Senate report or in the language of the amendment to indicate any intention to compel repayment under the circumstances present here. Relief from financial concern is of great therapeutic value, yet this benefit is largely lost if the disabled wage earner cannot know during the first year whether the payments he receives must be refunded. It would have been simple indeed for Congress to have merely stricken the language of expectancy from the statute and to have provided instead for loans or advances which could be cancelled should the disability last longer than twelve months. That the amendments did not so provide

is an indication that such a result was not intended.

Accordingly, we conclude, as did the Hearing Examiner, that Sierakowski was entitled to a period of disability from September 3, 1968 to July 31, 1969, and consequently to disability insurance benefits from April, 1969 to July, 1969. We agree with the holding of the District Court, however, that substantial evidence supports a finding that claimant has been overpaid for the months of August and September, 1969. Notwithstanding this, appellant urges that he should not be required to make repayment of the benefits that were erroneously paid him for those months. Title 42 U.S.C. § 404(b) provides:

"In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this sub-chapter or would be against equity and good conscience."

The Appeals Council found that the appellant was without fault in incurring the overpayment, but that he had been working since May, 1969, for relatively high wages, and

"To require him to repay the overpaid amounts in monthly installments would not deprive him or his family of ordinary and necessary living expenses."

It also found that there was no evidence that the appellant by reason of the bene-

---

expectation that the condition would last for twelve months, I can tell you that the Social Security Administration did think this was so. So that you don't need to press that point. What we have left now is a legal question . . ."

3. The decision of the Appeals Council, which became the final decision of the Secretary adopted with modifications, the findings of the hearing examiner. Those modifications do not affect our decision here, except insofar as the legal conclusions reached therefrom conflict, in our view, with the statutory intent of Section 423(d).

4. Congressional intent to encourage return to work was specifically recognized by the 1960 Amendments to the Social Security Act, Act of September 13, 1960, Publ.L. 86–778, which amended 42 U.S.C. § 422(c) to broaden the existing provision for vocational rehabilitation by extending the benefits of the twelve month trial work period to persons not previously covered by it. The purpose of the amendment is set forth in the Senate Report to its bill:

"The committee believes that the broadening of the trial-work period will be an incentive to greater rehabilitation efforts." S.Rep.No.1856, 86th Cong., U.S.Code Cong. and Admin.News, pp. 3608, 3623 (1960).

fits received had 'relinquished a valuable right' or that he had 'changed his position for the worse'.

The Council concluded that recovery of the overpayment would not defeat the purpose of Title II under the Act or be against equity and good conscience. For these reasons, recovery of the overpayment may not be waived.

■ These findings of the Appeals Council are supported by substantial evidence. There is nothing in the testimony of the appellant before the Hearing Examiner that indicated he had any financial hardship by the requirement to repay the benefits he received or that he had in any way changed his position by reason of receiving the payments. The claimant, therefore, failed to meet his burden of showing that recovery by the Secretary would be against equity and good conscience. Morgan v. Finch, 423 F.2d 551 (6th Cir. 1970)

Accordingly, the judgment of the District Court is reversed in part, affirmed in part. The case will be remanded to the District Court for further proceedings not inconsistent with this opinion.

Stevens, Circuit Judge, concurred and filed opinion.