Russell Thomas SCHAFFER

v.

Joseph A. CALIFANO, Jr.,[1] Secretary, Department of Health, Education and Welfare.

Civ. A. No. Y-76-58.

United States District Court, D. Maryland.

May 13, 1977.

---

1. Joseph A. Califano, Jr. succeeded F. David Mathews as Secretary of Health, Education and Welfare on January 25, 1977. Pursuant to 42 U.S.C. § 405(g) (1970), the appropriate substitution has been made.

Francis N. Iglehart, Towson, Md., for plaintiff.

John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The plaintiff, Russell Thomas Schaffer, instituted this action on January 13, 1976 to obtain judicial review of the final decision of the Secretary of Health, Education and Welfare which denied his claim for benefits under the Social Security Act, 42 U.S.C. § 301 (1970), *et seq.*

On January 31, 1975, Mr. Schaffer filed his original application for disability insurance benefits and for supplemental security income benefits alleging disability due to extensive head and face injuries and injuries to his left eye resulting from an automobile accident occurring on December 20, 1974. (Tr. 48, 54).[2] Mr. Schaffer's claims for benefits were denied on March 5, 1975 by the Division of Initial Claims. (Tr. 52). The plaintiff's request for reconsideration filed March 12, 1975 met with a similar denial on March 27th of that year. (Tr. 58–59).

On May 6, 1975, plaintiff requested a hearing before an Administrative Law Judge. His claimed entitlements to disability insurance benefits and supplemental security income were consolidated and heard before Administrative Law Judge Leonard N. Lawrence on September 16, 1975. (Tr. 20–47). Mr. Schaffer appeared and testified under oath before the Administrative Law Judge. Although he is now represented by counsel, he was not so represented throughout the administrative process.

On September 25, 1975, the Administrative Law Judge issued his written hearing

---

2. References are to the Court Transcript, forwarded by the Secretary and made part of the court file in this case.

decision in which he found that the claimant retained the residual capacity to return to several of the forms of work in which he had previously engaged and that, therefore, he was not disabled within the meaning of the Social Security Act. (Tr. 6–12).

Being dissatisfied with that determination, the plaintiff requested a review of that hearing decision before the Appeals Council on September 26, 1975. (Tr. 4). On November 14, 1975, the Appeals Council affirmed the finding of the Administrative Law Judge and denied the claimant benefits. (Tr. 3). That decision became the final decision of the Secretary of Health, Education and Welfare for purposes of review in this court. 20 C.F.R. § 404.951.

## PLAINTIFF'S MEDICAL HISTORY

Russell Thomas Schaffer was born on January 6, 1949 and is 28 years of age at the present time. He is 5'10½" tall, unmarried, and is buying his own home. (Tr. 28–29). At the time of the accident, out of which this claim arises, Mr. Schaffer had completed approximately two years of college and was then one semester away from obtaining an Associate of Arts Degree in Correctional Services. (Tr. 31). Prior to his accident, plaintiff worked for the Department of Corrections as a correctional officer, and has also worked for different periods as an assemblyline worker in a ski plant and as a retail salesman. (Tr. 32, 40). In addition, he worked for a short period one summer with the Board of Education as a custodian which involved the use of scrubbing and waxing machines and cleaning up school facilities. (Tr. 40).

An admission summary from the University of Maryland Hospital, dated December 20, 1974, reveals that Mr. Schaffer was an emergency admission and that he suffered acute head trauma, multiple facial fractures, and facial lacerations as a result of an apparent automobile accident. It appears that the noted head trauma resulted in an acute epidural hematoma. The patient was taken to the neurosurgical operating room where the treating physicians performed an evacuation of the acute epidural hematoma. During this procedure it was noted that he had suffered a large left supraorbital laceration, a left mid-face laceration, nasal fractures, comminuted, and an inner periorbital laceration, and left frontal sinus fracture. A left infraorbital rim fracture and anterior maxillary sinus fracture were also found.

It is not necessary for purposes of this review to review in detail the injuries suffered and the emergency surgical procedures performed. It suffices to say that Mr. Schaffer suffered acute and massive injuries to his head in the region of the left eye. (Tr. 76–77).

On December 23, 1974, a surgical procedure was undertaken to continue repair and reconstruction of the area around the eye including the eyelids. This procedure was tolerated well and no complications arose. (Tr. 78).

A neurosurgery note from the Outpatient Department of the University of Maryland Hospital, dated February 5, 1975, notes that the plaintiff was "fully recovered neurologically except diplopia". (Tr. 79). Diplopia is a condition in which two images of a single object are perceived.

A history record from the University of Maryland Hospital directed "To Whom It May Concern" relates that Mr. Schaffer was hospitalized from December 20, 1974 to January 9, 1975 for significant injuries sustained in an auto accident. It also revealed that he was at that time recovering from a severe head injury which "will prevent him from returning to work". (Tr. 83). Unfortunately, other than indicating that it was made in 1975 the illegibility of the date entry precludes consideration of this report in terms of relevant time periods. (Tr. 83–84).

On May 1, 1975, Dr. J. Parran, a resident in opthamology at the University Hospital, reported that Mr. Schaffer had received multiple facial fractures, lid and canalicular system injury, and impairment of extraocular muscle function in his left eye with resultant diplopia. Dr. Parran noted that the plaintiff would continue to be followed

until spring or summer of 1975 as an outpatient, at which time plastic reconstructive surgery, perhaps followed by extraocular muscle surgery, would be undertaken with recuperation from these procedures taking approximately five to six months. (Tr. 86).

On May 7, 1975, Dr. Pratt, the chief resident in neurosurgery at the University of Maryland Hospital, reported that Mr. Schaffer had been unable to work or drive a car since December 20, 1974, and that it was expected that his recovery would take approximately eight additional months before he would be able to return to work. (Tr. 87).

On September 16, 1975, Dr. Joel J. Feldman, a chief resident in plastic surgery at the Johns Hopkins Hospital, reported that Mr. Schaffer had undergone a craniofacial reconstruction for deformities resulting from the automobile accident. This procedure was performed on August 19, 1975. Dr. Feldman noted that a second stage procedure would be required in approximately six to eight weeks from the date of the report, and that it was anticipated that the plaintiff would not be able to return to work until approximately one or two months after completion of that procedure. (Tr. 91).

Also on September 16, 1975, Dr. Neil R. Miller, chief resident in ophthalmology at the Wilmer Ophthalmological Institute of the Johns Hopkins Hospital, reported that Mr. Schaffer had undergone multiple reparative operations and that at that time he was suffering from double vision and that he could, therefore, not use both eyes together. Dr. Miller further stated that "this is not helped by, nor have we suggested, patching of the left eye. He is to have further surgery in the near future by the Division of Plastic Surgery. Following this it is hoped that his double vision will ultimately be improved. Until this time I have instructed him not to wear any patch over the eye." (Tr. 92).

On September 16, 1975, Dr. Miller was contacted by either the Administrative Law Judge or a member of his staff for clarification of Dr. Miller's report of the same date.

This report of contact states as follows: "Doctor stated unequivocally that claimant may do light and sedentary work. A patch worn over the eye would not prove harmful in any way. The doctor was under the impression claimant's work as a correctional officer involved the use of a gun and on this basis could not return to that type work. He can read and write without restriction." (Tr. 95).

Dr. Feldman's report of September 16, 1975 was similarly clarified by contact from the Administrative Law Judge or his staff on that date. That report of contact states as follows: "Dr. Feldman stated claimant could do light and sedentary work so long as he is not affected adversely. He stated diplopia does not affect straight ahead vision, only peripheral. He stated the purpose for waiting for surgery is for allowing time for fluid in the area between the eye and the brain to disperse. This would not affect his current ability to engage in light and sedentary activities." (Tr. 96).

On September 17, 1975, Mr. Schaffer was informed of the existence of these reports of contact of the previous day by the Administrative Law Judge and his comments were solicited. (Tr. 97).

On September 20, 1975, the claimant responded stating two objections to the reports. As to the report from Dr. Miller, he noted that the clarification statement was in direct conflict with Dr. Miller's earlier statement concerning the advisibility of wearing a patch over the left eye. Mr. Schaffer noted that Dr. Miller's observation that "he can read and write without restriction" was essentially true but incomplete due to irritation to the eye which results from reading over a short period of time. With regard to the clarification of Dr. Feldman's report, the claimant took issue with the characterization of his diplopia as "only peripheral". He stated that it is true that it does not affect straight ahead vision, but it does affect the upward, downward, and leftward gazes." (Tr. 98). Mr. Schaffer concluded his letter to the Administrative Law Judge as follows: "I have been rendered incapable of doing heavy labor for

the present by the fact that I am recovering from major surgery of August 19, of this year. While I would be, from a recovery standpoint, able to do light, clerical type work, this is precluded by the condition of my eyes." (Tr. 99).

It was upon the basis of this state of the evidence that the Administrative Law Judge rendered his unfavorable hearing decision.

## APPLICABLE STANDARDS OF REVIEW

In order to be eligible for disability benefits the claimant must establish that he is under a disability within the meaning of the Act. "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as follows:

Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . .

Section 423(d)(2)(A) provides that:

An individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .

█ The burden is on the claimant to furnish medical and other evidence of the existence of a disability. 42 U.S.C. § 423(d)(5) (1970). The sole issue before this Court is whether there is "substantial evidence" to support the Secretary's decision. 42 U.S.C. § 405(g) (1970). The fact that the record taken as a whole might support a different conclusion is immaterial. The language of Section 405(g) precludes a *de novo* judicial proceeding and requires that the Court uphold the Secretary's decision even if the Court should disagree with the decision so long as it is supported by substantial evidence. *Whiten v. Finch*, 437 F.2d 73 (4th Cir. 1971); *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972). The phrase "substantial evidence" has been defined by the Fourth Circuit Court of Appeals to be:

. . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more that a mere scintilla of evidence but may be somewhat less than a preponderance. *If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".* (emphasis added).

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Blalock v. Richardson, supra*, at 776.

█ There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision. These are:

1. The objective medical facts;

2. The diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact;

3. Subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

4. The claimant's educational background, work history, and present age.

*Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962); *Blalock v. Richardson, supra*. Thus, it is for the Secretary in the first instance to weigh the evidence and resolve conflicts therein, and the purpose of review in this Court is not to substitute the view of this Court for that of the Secretary so long as there is substantial evidence to support the Secretary's conclusion.

In this case plaintiff has brought claims under both the disability insurance benefits provisions and the supplemental security income provisions. 42 U.S.C. § 1382 (Supp. V 1975). Inasmuch as a supplemental security income determination is based upon a prior finding of disability, the following discussion is equally applicable to both claims.

## CONCLUSIONS OF LAW

■ Application of these standards of review to the facts in the instant case compels the conclusion that the decision of the Secretary that the plaintiff is not disabled within the meaning of the Act is supported by substantial evidence and must, therefore, be affirmed.

It is obvious from the medical evidence in this case that the claimant suffered severe and painful injuries which have left him somewhat disfigured and quite clearly rendered him incapable of engaging in any substantial gainful activity for some period of time. The question, however, is whether his injuries and resulting impairments rendered him unable to engage in substantial gainful activity for a continuous period of twelve months or more. 42 U.S.C. § 423(d)(1)(A).

At the outset it is clear, both from the medical evidence of record and from Mr. Schaffer's own testimony under oath before the Administrative Law Judge, that he had in all respects recovered fully from the injuries sustained in his automobile crash with the exception of residual double vision and some scarring and disfigurement. (Tr. 79). In fact, at two points during the hearing before the Administrative Law Judge the plaintiff minimized the impact of the double vision problem and suggested that his recovery from recurring surgical procedures was the main disabling factor. (Tr. 39, 42). Earlier during the course of the hearing, he stated "my present complaints are really none symptomatically. I am just recovering from my last operation so I can have the next one." (Tr. 37).

■ Thus, there are really two facets to Mr. Schaffer's claimed impairments. First, although his testimony indicates that he did not rely strongly on the evidence of double vision, his later communications with the Administrative Law Judge revealed that he now regards this to be a significant problem. Second, his allegations raise the interesting question of whether an ongoing series of major operations followed by long terms of required recuperation are sufficient to meet the continuity requirements of the relevant provisions of the Social Security Act, when the impairment which necessitates these major operations is not, in and of itself, disabling. As to the first question raised, it is clear that, although the evidence is in substantial conflict, the resolution of such conflicts is within the province of the Secretary as the trier of facts, *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Blalock v. Richardson, supra*, and that there exists substantial evidence to support the conclusion at which the Secretary arrived.

While Dr. Miller's report of September 16, 1975 stated that plaintiff's double vision "is not helped by, nor have we suggested, patching of the left eye", plaintiff himself stated that covering his left eye would end the incidence of double vision, (Tr. 43), but that he had been told that covering his left eye was medically contraindicated. However, the clarification report of the same date indicates that the wearing of a patch over his left eye would not prove harmful in any way. (Tr. 95). Thus, it would seem that the symptoms of diplopia, if not the cause, would be correctable so that the plaintiff could return to work.

Moreover, the clarification of Dr. Feldman's report of September 16, 1975, as well as Mr. Schaffer's response to that report, reflect that this eye condition does not affect plaintiff's vision straight ahead. (Tr. 96, 98). Mr. Schaffer acknowledges in his letter of September 20th that from a recovery standpoint he would be able to do light, clerical type work, but suggests that this would be precluded by the condition of his eyes. (Tr. 99).

This conflict in the evidence has been resolved adversely to plaintiff's claim. Based upon this Court's finding that that determination was based upon substantial evidence, if follows that it must be affirmed.

■ The second issue concerns Mr. Schaffer's periodic hospitalizations for reconstructive surgery necessitated by the seriousness of his accident. As previously noted, a disabling impairment must last or be

reasonably expected to last for a continuous period of not less than twelve months. While research has disclosed no federal case presenting this precise issue, reference to the statutory definitions of disability leads this Court to conclude that plaintiff's hospitalizations for the performance of major surgery and the resulting periods of recovery do not amount to disability within the meaning of the Social Security Act, inasmuch as there are intervening periods when he would, by his own admission, be able to work. (Tr. 35, 39).

Plaintiff's underlying injuries have themselves been determined to be insufficient to be disabling to this particular claimant. Although the nature of claimant's hospitalizations and the periods of recuperation required by the major surgery which he periodically undergoes are factors which require that he avoid work of any kind for varying periods of time, they represent distinct and separate periods of potential disability which cannot satisfy the statutory requirement of continuous disability for twelve months or more. This is true even though the underlying impairment which they are designed to correct will itself continue to exist most likely for more than the statutory minimum period. Accordingly, this Court concludes, based upon the factual circumstances of this case that, as a matter of law, plaintiff's required periods of hospitalization for major reconstructive surgery are not disabling within the meaning of the Social Security Act.

As an alternative to the granting of summary judgment in his favor, plaintiff has moved that this Court order a remand to the Secretary of Health, Education and Welfare for reconsideration of his claim, in part based upon a proffer of new evidence. Two exhibits are appended in support of this motion. The first is a narrative report from Dr. Joel J. Feldman, dated July 9, 1976, in which he first recounts plaintiff's automobile accident and the resulting required surgery. This report reveals that two later surgical procedures were undertaken—one on November 25, 1975 to correct an upper eyelid deformity which caused the

eyelashes to rub the eye, and a second procedure was performed on April 9, 1976, apparently primarily for cosmetic purposes. In pertinent part, Dr. Feldman states that: "From the time of the accident in December, 1974, through the series of reconstructive procedures—outlined already, Mr. Schaffer went through successive phases of post-operative healing and recovery. Because of this he was non-employable during this entire one and one-half year period." Reference to this passage of Dr. Feldman's report manifests his belief that plaintiff's non-employability during the period of one and one-half years was based upon the succession of operations which he underwent and the post-operative healing and recovering required. This basis for disability has already been discussed and rejected by this Court. Therefore, Dr. Feldman's report of July 9, 1976 cannot be considered as more than merely cumulative to the previously existing medical evidence and, in fact, supports the previously stated conclusion that the underlying basis for Mr. Schaffer's disability concerns the reconstructive procedures and recovery required. Thus, no good cause is shown. *Teal v. Mathews*, 425 F.Supp. 474, 481 (D.Md.1976).

The second exhibit in support of plaintiff's motion for remand is a report from Dr. Stuart Silver, dated November 3, 1976. This report details Dr. Silver's findings based upon a psychiatric evaluation of Mr. Schaffer resulting from seven interviews over a period of two months preceding the date of the report. Dr. Silver's report relates that Mr. Schaffer presents himself as an alert, cooperative and coherent 27 year old single male, who always presents himself in a neatly groomed fashion. The head injury resulting in a depressed left eye was noted, but was characterized as "not strikingly disfiguring at the present time". The evaluation disclosed a depressive trend with certain grandiose and mildly unrealistic qualities in the patient's thoughts. While some paranoid trend was noted, Dr. Silver stated that "there were no clearly elicited delusional symptoms".

Testing revealed that Mr. Schaffer functioned in the above-average range intellectually and no perceptable deficits were noted in his store of information, memory or intellectual functions on close clinical testing. The examiner concluded that the patient exhibited signs of latent schizophrenia which he defined as a category for patients having clear symptoms of schizophrenia but no history of psychotic schizophrenic episode. The report relates that due to family background, plaintiff has a long standing emotional difficulty which culminated in a brief stay at Spring Grove Hospital Center. However, following that hospitalization the report relates that Mr. Schaffer developed a workable obsessional way of handling the inner-emotional turmoil which enabled him to function socially in an adequate fashion. Dr. Silver characterized that earlier adjustment as excellent in spite of a poor prognosis. However, Mr. Schaffer's adjustment following his unfortunate disfiguring accident has not been the best. Dr. Silver concluded that regular psychotherapeutic sessions for a period of one to three years would be necessary with occasional intensive psychiatric support and treatment being needed.

In the view of this Court, the report of Dr. Silver does not constitute good cause for remand. It is true that the report portrays an understandably troubled and depressed young man with problems of psychological adjustment flowing directly from his traumatic experience. However, there is no suggestion whatsoever in the report that the noted psychological impairments would, in any fashion, disable him from engaging in substantial gainful activity either because the required psychotherapeutic sessions must necessarily be conducted on an inpatient basis, thus precluding his work on the outside, or because the suggested impairments are themselves of such severity as to render him incapable of working. For these reasons, Dr. Silver's report is not suggestive of the existence of a new impairment which would likely change the result were this case to be remanded. *Lucas v. Finch,* 322 F.Supp. 1209, 1213 (S.D.W.Va. 1970), *aff'd, Lucas v. Gardner,* 453 F.2d

1255 (4th Cir. 1972). Accordingly, this Court finds that "good cause" to remand this case to the Secretary for further consideration has not been shown. *Teal v. Mathews, supra.*

This case is before the Court on cross-motions for summary judgment filed by the parties pursuant to Rule 56, F.R. Civ.P. Summary judgment is appropriate only if:

. . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

None of the material facts in this case are contested by the parties. A determination of whether the Secretary's decision is supported by substantial evidence presents only a question of law to which the summary judgment procedure is particularly applicable. *Beane v. Richardson,* 457 F.2d 758 (9th Cir. 1972); 6 Moore's Federal Practice, § 56.17[3].

Having found that there is no genuine issue as to any material fact and that only issues of law exist which are properly determined by this Court, and further that the Secretary's decision is supported by substantial evidence, it follows that summary judgment should be granted in favor of the Secretary.

Accordingly, it is, this 13th day of May, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion for summary judgment be, and the same is hereby, DENIED.

2. That plaintiff's motion for remand be, and the same is hereby, DENIED.

3. That the defendant's motion for summary judgment be, and the same is hereby, GRANTED.