Kevin O. KENDRICK, Complainant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 78-150-N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Nov. 1, 1978.

William F. Burnside, Virginia Beach, Va., for complainant.

William B. Cummings, U. S. Atty., E. D. Va., Norfolk, Va., for defendant.

OPINION AND ORDER

CLARKE, District Judge.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff appeals from a final order of the Secretary of Health, Education and Welfare holding (1) that he has never been entitled to a period of disability or to disability benefits and.(2) that he must reimburse the Government for benefits already paid.

In October, 1975, plaintiff, then a nineteen-year-old college student, entered Bayside Hospital in Virginia Beach, Virginia. Physicians diagnosed his medical problems as acute leukemia and anemia. Plaintiff filed an application for a period of disability, disability insurance benefits, and Supplemental Security Income benefits on December 12, 1975. He alleged that he had been unable to work because of his illness since October 9, 1975. The Social Security Administration approved the applications on December 23, 1975, establishing a continuing period of disability from October 9. Supplemental Security Income payments began in late 1975. His first disability insurance benefit payments arrived in April, 1976.

After plaintiff underwent intense chemotherapy and treatment, apparent complete remission occurred. Although his doctors informed him that he would need to return to the hospital every two to three months for four to six weeks of further therapy, he felt well enough to perform some work between the periods of hospitalization. He began work for the Tidewater Equipment

Corporation as a truck driver on March 4, 1976. The record indicates that he received $4.00 per hour and worked 40 hours each week there. He reported for all but eight workdays during his employment.[1] On April 28, 1976, he resigned his job at Tidewater Equipment and reported the next day for employment as a welder at the Norfolk Shipbuilding and Drydock Corporation. In his new job, when he felt well enough, he worked 40 hours each week. Generally, he was able to work for approximately two months at a time before having to undergo four or five consecutive weeks of therapy.[2] He was paid $4.35 per hour when hired, but his wages had increased to $5.05 per hour by November, 1976 and were $5.78 per hour at the time of the hearing in November, 1977.

Plaintiff's gross wages totaled $4232.81 for the year 1976 and $1477.75 for the period between January 1 and May 25, 1977.[3] On November 18, 1976, the Social Security Administration notified him that it was investigating his work activity and that the investigation might result in termination of benefits. What specifically prompted the investigation, which occurred seven months after plaintiff received his first disability insurance benefits payments, is not clear from the record. He last received a bene-

fits payment in March, 1977, and benefits were stopped effective April, 1977 pending further investigation into his disability.

The Social Security Administration found on June 30, 1977, that, because plaintiff was working 40 hours per week and earning $800 per month, he was engaging in substantial gainful activity and consequently had never been disabled. Plaintiff requested reconsideration of this finding, asserting that he was disabled because he could work for only 6 months each year. In a Notice of Reconsideration dated July 28, the Social Security Administration determined that plaintiff had never qualified for disability insurance payments because he had returned to substantial gainful work in March, 1976 and therefore was not disabled for a sufficient period of time to qualify for benefit payments under the law.

In a separate Notice of Reconsideration dated July 12, 1977, the SSA notified plaintiff that he had been overpaid $123.50 in Supplemental Security Income payments because his gross income for the first quarter of the calendar year 1976 (which had not previously been considered in computing the payments because, the SSA alleged, plaintiff had failed to report it) exceeded the amount that statutory law allows to be "disregarded."[4] Repayment of the

---

1. Records furnished by Tidewater Equipment show that plaintiff received gross wages of $502.00 in March and $597.00 in April. He missed work because of illness on March 9, 10, 11, 12, and 15, and on April 14, 15, and 16.

2. Norfolk Shipbuilding and Drydock Corporation reported that between April 29, 1976, and May 25, 1977, plaintiff's attendance record was as follows:

| April 20 – July 9 | at work |
| July 12 – Aug. 13 | sick |
| Aug. 16 – Oct. 8 | at work |
| Oct. 11 – Nov. 19 | sick |
| Nov. 22 – Nov. 24 | at work |
| Nov. 29 – Feb. 22 | laid off * |
| Feb. 23 – Apr. 8 | at work |
| Apr. 11 – May 11 | sick |
| May 11 – May 25 | at work |

* At the hearing, plaintiff testified that he entered the hospital for several weeks of treatment on January 18, 1977.

3. In addition to the $1099.00 that plaintiff earned at Tidewater Equipment Corporation,

see note 1 supra, he earned the following monthly gross wages at Norfolk Shipbuilding and Drydock Corporation:

| | 1976 | | | | 1977 | |
|---|---|---|---|---|---|---|
| May | – $767.78 | Sept. | – $620.75 | Jan. | – 0 | |
| June | – 443.70 | Oct. | – 377.15 | Feb. | – $127.92 | |
| July | – 398.03 | Nov. | – 213.20 | Mar. | – 880.79 | |
| Aug. | – 313.20 | Dec. | – 0 | Apr. | – 383.76 | |
| | | | | May | – 85.28 | |

4. Generally, the amount of disability insurance benefits (often called Title II benefits) is not automatically affected or reduced by the amount of income of the claimant alleging disability. Rather, eligibility is largely determined by the criteria set forth in Title II's definition of "disability." See 42 U.S.C. §§ 416(i), 423. In contrast, eligibility for Supplemental Security Income Benefits (often called Title XVI benefits) is governed not only by the definition of disability in 42 U.S.C. § 1382c(a)(3)(A) but also by the amount of the claimant's income. See 42 U.S.C. § 1382. Congress dictated that in

$3,574.70 in disability insurance payments and $123.50 in Supplemental Security Income payments allegedly overpaid was demanded. Plaintiff filed a request for a hearing on these determinations on August 17, 1977.

A *de novo* hearing was held before an Administrative Law Judge on November 15, 1977. The sole witnesses were plaintiff, his mother, and Verona Wasserman, who is the District Office Manager for Representative G. William Whitehurst. One week later the Administrative Law Judge issued his decision. He found that plaintiff was not and never had been entitled to a period of disability or to disability benefits under the provisions of Sections 216(i), 223, and 1614 of the Social Security Act (42 U.S.C. §§ 416(i), 423, and 1382a, respectively) because "he has not been precluded from engaging in substantial gainful activity for a continuous period of at least 12 months." The Administrative Law Judge further found that plaintiff was not "without fault" in receiving the benefits and therefore must reimburse the Government for the overpayments. This decision became the final decision of the Secretary of Health, Education and Welfare when the Appeals Council affirmed it on January 19, 1978. Although the Social Security Administration later advised plaintiff that his Title II overpayments totaled $2700.20 rather than $3574.90,[5] he filed this appeal on March 18, 1978.

In essence, the Secretary made two determinations: first, that plaintiff has never been disabled; second, that plaintiff was not "without fault" in receiving the disability payments. The standard of review this Court must apply is clear. 42 U.S.C. § 405(g) and, by incorporation, 42 U.S.C. § 1383(c)(3) provide that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." The Fourth Circuit defines substantial evidence as "more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Califano,* 574 F.2d 802, 803 (4th Cir. 1978). With these guidelines in mind, the Court turns to the issues.

### Disability

The burden of proof is on the claimant to establish his entitlement to disability benefits. *E. g.,* 42 U.S.C. § 423(d)(5); *Taylor v. Weinberger,* 528 F.2d 1153, 1156 (4th Cir. 1975); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that an individual is entitled to Title II disability insurance benefits if, *inter alia,* he is under a disability. 42 U.S.C. § 423(a)(1)(D). "Disability" is defined in the same section as follows, in pertinent part:

(d)(1) The term "disability" means—

(A) Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .[6]

(2) For purposes of paragraph (1)(A)—

(A) an individual (except a widow, surviving divorced wife, or widower for pur-

---

determining the income of a claimant, the Government shall exclude $60 of income, earned or unearned, per quarter. *Id.* § 1382a(b)(2). If a claimant is disabled and under age 65, an additional $195 of earned income per quarter and one-half of the remainder thereof is excluded. *Id.* § 1382a(b)(4)(B). In plaintiff's case, his gross wages for the first quarter of 1976 were $502.00. *See* note 1 *supra.* From this, $60 and $195 were deducted, leaving a total of $247.00, of which one-half was deducted, leaving $123.50 in non-excludable earned income.

**5.** The Government admitted that it had erroneously assessed plaintiff for payments that were in fact never made in April, May, and June of 1977. The $2700.20 overpayment consists of monthly payments of $213.60 made in April and May, 1976, and $227.30 from June, 1976 through March, 1977.

**6.** An almost identical definition appears in section 216(i)(1) of the Act, 42 U.S.C. § 416(i)(1).

poses of section 402(e) or (f), of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

.   .   .   .   .

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

In order to receive Supplemental Security Income payments on the basis of disability under Title XVI of the Social Security Act, an individual must be disabled and must not have income or resources in excess of the statutory limits. 42 U.S.C. § 1382. Section 1614(a), 42 U.S.C. § 1382c(a), defines "disabled individual" as follows:

(3)(A) An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual) "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Since the definitions of "disability" in Title II and Title XVI are virtually identical, the following discussion is equally applicable to both types of disability payments. *Schaffer v. Califano,* 433 F.Supp. 1218, 1222 (D.Md. 1977).

The Secretary found that plaintiff has had non-lymphocytic leukemia—"a very serious disease process"—since October 9, 1975. This disease causes plaintiff to undergo intensive therapy at regular intervals and, therefore, to miss work for six or more months each year. The Secretary found, however, that plaintiff had not proven that he was disabled:

[A]s he says, he is only able to work five or six months a year. However, the unrebutted facts in this case are that *he has never been off from work for a continuous period of at least 12 months due to his illness. This is the first and foremost requirement before an individual is entitled to social security disability insurance benefits.* It is to his own good fortune that this has not occurred.

. . . [T]here is no room for any sympathy or equity when the clear facts of the case prove, as they do in this case, that the individual seeking benefits has not been precluded from engaging in work activity for a' continuous period of at least 12 months. Thus, he has never been entitled to disability insurance benefits, from the outset, . . . *he is [not] entitled to disability insurance benefits unless it does in fact preclude him from engaging in work activity for a continuous period of at least 12 months.* Unfortunately for the claimant, Congress has never passed any provisions in the Social Security disability section of the Act to cover this type of situation but to the contrary, have always found that *the disability must be for at least 12 months,*

. . .

(emphasis added)

It is apparent from the above-quoted sections that the Secretary construed the Social Security Act as allowing benefits only when a claimant is in fact precluded from working for a continuous twelve-month period. Applying this interpretation, the Secretary denied benefits because plaintiff's disease has never forced him to refrain completely from work for a period of one year. The Court finds that this interpretation of the Act is erroneous in two respects.

First, the Act requires neither that the disability actually continue for 12 months nor that the claimant in fact be unable to work for 12 months. There are two steps to a finding of "disability": first, a finding of a medically determinable physical or mental impairment which can be expected to result in death or *has lasted or can be expected to last* for a continuous period of at least 12 months; second, a finding that the impairment in fact causes an inability to engage in any substantial gainful activity. *Harris v. Richardson,* 450 F.2d 1099, 1101 (4th Cir. 1971); *Thomas v. Celebrezze,* 331 F.2d 541, 545 (4th Cir. 1964). The Act clearly allows benefits not only for those whose impairments last for a continuous 12-month period, but also for those

whose impairments are *expected to last* for 12 months. The expectation, not the reality, of a 12–month impairment is sufficient. As the Senate Committee which authored the present 12-month provision noted:

> The effect of the provision the committee is recommending is to provide disability benefits for a totally disabled worker even though his condition may be expected to improve after a year. As experience under the disability program has demonstrated, in the great majority of cases in which total disability continues for at least a year the disability is essentially permanent. Thus, where disability has existed for 12 calendar months or more, no prognosis would be required. *Where a worker has been under a disability which has lasted for less than 12 calendar months, the bill would require only a prediction that the worker's disability will continue for a total of · at least 12 calendar months after onset of the disability.*

S.Rep. No. 404, 89th Cong., 1st Sess. (1965), published in 1 *U.S.Code Cong. & Adm. News,* 89th Cong., 1st Sess., p. 2039 (1965) (emphasis added). This does not mean that an expectation of a 12-month disability entitles the claimant to disability payments for at least a year; the Secretary may later terminate the benefits within the 12-month period in the month in which he finds that the claimant either is able to engage in substantial gainful activity or no longer has a severe impairment. 20 C.F.R. § 404.-1539(a).[7] The significant point here is that a claimant whose disability was expected to last at least twelve months does not automatically lose entitlement to all benefits he received merely because he worked within the 12-month period.

Apparently the Secretary did find that a "medically determinable physical or mental impairment" had been shown to exist. He agreed with plaintiff's physicians that plaintiff had acute non-lymphocetic leukemia—a "very serious disease process" that forces plaintiff to undergo periodic inten-

---

7. Unless the claimant is working during a "trial work period," discussed *infra.*

sive therapy.[8] It is unclear whether the Secretary applied his interpretation of the 12-month requirement to the impairment—leukemia—itself. Perhaps he did so, because he cited the "periods of apparent complete remissions" during which plaintiff worked. This might be construed as a finding that the "impairment" did not last for a continuous 12-month period. But even if he so found, this interpretation was erroneous because the 12–month requirement is satisfied by the expectation, as well as the reality, of a one-year duration.

■ However, the Secretary clearly *did* apply his 12-month test to the second part of the *Harris-Thomas* test, that is, whether the impairment caused "inability to engage in substantial gainful activity." Contrary to the Secretary's decision, the fact that a claimant works during a 12-month period does not necessarily indicate an ability to engage in substantial gainful activity during that period. *See, e. g., Sierakowski v. Weinberger,* 504 F.2d 831 (6th Cir. 1974); *Thorne v. Weinberger,* 530 F.2d 580 (4th Cir. 1976). By ruling that plaintiff was not entitled to benefits because he had not been out of work for a continuous 12-month period, the Secretary read the words, "can be expected to last" out of the statute. If the 12-month provision applies to the "inability to engage in substantial gainful activity" as well as to the "impairment,"[9] the Secretary refused to consider whether plaintiff had shown that such inability could be expected to last for 12 months.

The Secretary committed a second error by construing the definition of "disability" as requiring that in all cases the inability to engage in any substantial activity, and the impairment causing it, are subject to the 12-month requirement. Even if the Secre-

tary had interpreted the 12-month requirement correctly, he conveniently ignored a key phrase in the definition. "Disability" means an inability to engage in substantial gainful activity by reason of a medically determinable impairment which *can be expected to result in death or* which has lasted or can be expected to last for a continuous 12–month period. Obviously, the statute does not require a 12-month period when death is expected to result. Plaintiff submitted a statement to the Secretary from Dr. Lillian J. Love, a physician at the Baltimore Cancer Research Center, where he has been treated since diagnosis of his leukemia. Dr. Love stated that plaintiff "has an ultimately fatal disease." The Secretary cited, and did not question, Dr. Love's statement. He made no specific finding that plaintiff had a disease which may be expected to result in death, but his finding that plaintiff goes through periods of "remissions"—a term closely associated with terminal malignant disorders—indicates that he presumed a fatal disease to· exist. Yet, the Secretary completely ignored the "can be expected to result in death" portion of the definition of disability and applied the 12–month requirement.

■ The mere fact that an individual suffers from terminal cancer does not entitle him to disability benefits. The critical question is whether the terminally ill claimant is unable to engage in substantial gainful activity because of his illness. *See, e. g., Price v. Richardson,* 443 F.2d 347 (5th Cir. 1971); *Fuerst v. Secretary of Health, Education and Welfare,* 354 F.Supp. 185 (S.D.N.Y.1973). But here the Secretary totally misread the statutory definition, which clearly imposes no 12-month requirement when the disease "can be expected to result in death."

---

**8.** Regulations of the Social Security Administration provide that a diagnosis and finding of acute leukemia generally creates a rebuttable presumption of disability. *See* 20 C.F.R. § 404.1502(a) (1977); *Id.* Subpart P Appendix § 7.11.

**9.** Courts disagree on this issue. *Compare Sierakowski v. Weinberger,* 504 F.2d 831, 833 (6th Cir. 1974) and *Alexander v. Richardson,* 451 F.2d 1185, 1186 (10th Cir.), *cert. denied,* 407

U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972), *with White v. Finch,* 311 F.Supp. 307, 310-11 (D.Mass.1970). The Senate report, quoted *supra,* uses only the word "disability" in describing the 12–month requirement. Thus, it would appear that the two components of disability—inability to engage in substantial gainful employment and the impairment which causes it—are both subject to the requirement.

■ Even when an impairment is expected to result in death or meets the 12-month requirement, the claimant may not collect disability benefits if he has never been precluded from engaging in substantial gainful activity. However, the Court cannot say that the Secretary's errors of law here were harmless. Admittedly some evidence in this case would seem to indicate "substantial gainful activity." Plaintiff was hired by two different companies; he worked five or six months a year, although his work was frequently interrupted for therapy; and his average monthly earnings far exceed the $200 amount that the Secretary has established as indicating ability to engage in substantial gainful activity. *See* 20 C.F.R. § 404.1534(b).

■ But because the Secretary erroneously ruled that inability to engage in substantial gainful activity must exist in fact for a continuous 12-month period, he ignored countervailing evidence which might establish an *inability* to engage in substantial gainful activity. A disability claimant need not be bedridden or be suffering constantly. *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964). A return to *some* gainful activity may not disqualify a recipient of benefits. In some circumstances, the sporadic and transitory work may constitute an *inability* to engage in substantial gainful activity. *Wilson v. Richardson*, 455 F.2d 304 (4th Cir. 1972). Earning wages in excess of the $200 standard is not dispositive, especially if the claimant needs

to work "to keep the wolf from the door." *E. g., Collins v. Mathews*, 547 F.2d 795 (4th Cir. 1976); *Wilson v. Richardson, supra*; *Hanes v. Celebrezze*, 337 F.2d 209 (4th Cir. 1964). Because he considered decisive the mere fact of plaintiff's part-time work, the Secretary ignored the undisputed evidence of plaintiff's chronic and unpredictable absenteeism—a factor which Social Security Regulations state may indicate an inability to engage in substantial gainful activity.[10] Therefore, the errors of law committed in this proceeding cannot be called harmless and the decision of the Secretary as to disability must be reversed.[11]

*Fault*

After finding that plaintiff had never qualified for disability benefits, the Secretary determined that plaintiff was not "without fault" and accordingly must reimburse the Government for the overpayments. This finding of "fault" is not supported by substantial evidence.

■ Section 204(b) of the Social Security Act provides:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter [commonly known as Title II] or would be against equity and good conscience.

42 U.S.C. § 404(b). Thus, a person who has received more disability benefits than the

---

**10.** 20 C.F.R. § 404.1533 (1977) provides that:

[W]here an individual, because of his impairment, is unable to spend as much time in work activities as is customarily spent by individuals without impairment in similar work, but such individual is able to perform significant duties on a part-time basis, his ability to work on a part-time basis also tends to show an ability to engage in substantial gainful activity.

But 20 C.F.R. § 404.1534(a) provides:

Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity.

**11.** *Schaffer v. Califano*, 433 F.Supp. 1218 (D.Md.1977), cited frequently by the Government, does not govern this case. In *Schaffer*, the court ruled that an ongoing series of major operations followed by long terms of required recuperation were not sufficient to constitute disability. But in that case the claimant had no disabling impairment; rather, he had double vision and physical disfigurement, for the correction of which he had scheduled the operations. Here, however, there is strong, undisputed evidence that plaintiff's disease would be disabling if untreated, and plaintiff was not free to schedule treatment at his leisure.

Act allows is under no obligation to repay the overpayments if the Secretary determines that (1) the recipient is without fault *and* (2) repayment *either* would defeat the· purpose of Title II *or* would be against equity or good conscience. 20 C.F.R. § 404.-506 (1977). The recipient of the alleged overpayments has the burden of proving both elements. *E. g., Sierakowski v. Weinberger*, 504 F.2d 831, 836 (6th Cir. 1974). Regulations of the Secretary define "fault" as follows:

"Fault" as used in "without fault" . . applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the Administration will consider all pertinent circumstances, including his age, intelligence, education, and physical and mental condition. What constitutes fault (except for "deduction overpayments"—see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507 (1977).

At the hearing, plaintiff and two other witnesses contended that he had been entitled to disability benefits but also asserted that, even if any payments were improperly made, he was without fault in receiving them. Plaintiff testified that on several occasions before he returned to work, and before he had completed his five-month waiting period,[12] he called (and once personally visited) the local Social Security office and inquired as to what effect his going to work would have on his entitlement to benefits. According. to plaintiff, several personnel informed him that he was entitled to a twelve-month trial work period[13] and that working would not affect his eligibility. Eventually, the Social Security office sent him a "little yellow form" (evidently a questionnaire) concerning the wages he expected to earn and the hours he expected to work in his new job. Plaintiff's mother testified that she, too, had called the Social Security office and received the same information as plaintiff. Finally, Ms. Verona Wasserman testified that, at plaintiff's request, she had talked to a Mr. Teets, Mana-

12. The Social Security Act provides that an individual is entitled to disability insurance benefits only if he has been under a disability throughout a five-month waiting period. 42 U.S.C. § 423(a)(1), (c). Actual payment of benefits begins with the first month after completion of the waiting period. Since the Social Security Administration found that plaintiff's disability began on October 9, 1975, his waiting period ended five months later, on March 9, 1975 (assuming that he was disabled during the entire period—an assumption which the Secretary evidently disputes because plaintiff began working for the Tidwater Construction Company on March 4, 1975). *See, e. g., Otworth v. Finch*, 435 F.2d 542 (6th Cir. 1970); 20 C.F.R. § 404.306, 404.308 (1977).

13. After a claimant completes his five-month waiting period, he may then attempt to return to work for a period of time up to nine months without the work being considered as evidence of ability to perform substantial gainful activity. 42 U.S.C. § 422(c); 20 C.F.R. § 404.1536 (1977). Services rendered during the period of trial work may be considered, however, in determining whether the "disability" ceased at any time after expiration of this period. *Id.* Since 42 U.S.C. § 423(a)(1) provides that disability payments end (barring death or attainment of age 65) in the third month following the month in which the disability ceases, the nine-month trial work period is in effect a twelve-month period.

ger of the local Social Security office. Mr. Teets, she alleged, told her that plaintiff could continue working without losing his entitlement.

■ After reviewing this evidence, the Secretary found that plaintiff was not "without fault" for two reasons. First, plaintiff failed to furnish information which he knew or should have known to be material:

> [T]he Administrative Law Judge is convinced, had the facts been made known by him or his mother to the proper officials in the Social Security Administration, that is that he had returned to work some five months after alleging he was disabled, that this error would not have been perpetrated and compounded by paying of benefits. *It is obvious that the people to whom they spoke were under the impression that he had been drawing social security disability insurance benefits*, not that he had just applied and had not received any. (emphasis added)

Second, plaintiff knew or could have been expected to know that the payments were incorrect:

> [I]t would seem apparent to this Administrative Law Judge that this young man, his mother and advisor were and are intelligent enough to understand the *clear instructions and explanations in regard to disability in the various pamphlets which they had received* and to know that a person who goes to work a few short months after alleging he is disabled, could not be entitled to social security disability insurance benefits. (emphasis added)

No evidence supports the Secretary's conclusion that plaintiff and his mother withheld relevant and critical information from the Social Security Administration. Both plaintiff and his mother testified that they informed the officials of his intention to return to work, his pending application for benefits, and the nature, wages, and hours of his job. The credibility of witnesses, of course, is for the Secretary to decide. *E. g., Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Here the Secretary clearly

believed that plaintiff and his mother did contact the Social Security office, but he did not believe that they had informed the officials that plaintiff had not yet completed his five-month waiting period. The flaw in the Secretary's finding is the total absence of evidence contradicting the testimony of plaintiff and his mother. The Secretary could have subpoenaed Social Security employees or records that might have cast doubt upon this evidence, *see* 42 U.S.C. § 405(d), but he failed to do so. It is true that plaintiff failed to produce the "little yellow questionnaire" on which he allegedly gave the Social Security Administration all necessary information about his status and job. But the testimony concerning the telephone calls and visits of plaintiff and his mother to the local Social Security office is uncontradicted. Indeed, the Government admitted in its August 4, 1977, "Supplemental Security Income Notice of Decision to Recover Overpayment" that plaintiff had inquired about returning to work. The only evidence before the Secretary showed that in returning to work plaintiff had relied upon information from official sources within the Social Security Administration. Faced with such uncontradicted evidence, the Secretary had absolutely no basis for finding that plaintiff had withheld information. *See Michalak v. Weinberger*, 416 F.Supp. 1213 (S.D.Tex.1976), a strikingly similar case; 20 C.F.R. § 404.510(b).

The Secretary also found that, even without considering the failure to furnish information, plaintiff, his mother, and Ms. Wasserman should have known that acceptance of the benefits by "a person who goes to work within a few short months after he was disabled" cannot receive benefits. The Secretary based his findings on the "clear instructions and explanations" in the various pamphlets that plaintiff had received. Perhaps, through experience and expertise, the Secretary knew *verbatim* the contents of every conceivable Social Security pamphlet concerning disability benefits. If he had such knowledge, however, he failed to note it. The record contains no copies of the pamphlets that plaintiff received. The Sec-

retary, as noted *supra*, could have subpoenaed copies of such pamphlets either from the plaintiff or from the local Social Security office, but he did not. Indeed, at the hearing, plaintiff was never even asked what pamphlets, if any, he had been issued. There is, therefore, no basis in the record for the finding that plaintiff ever possessed pamphlets with "clear" instructions. The Social Security Act is an exceedingly complex and detailed law, and the Secretary cannot arbitrarily assume that plaintiff understood its application to his particular situation.[14] The very fact that plaintiff felt compelled to consult the officials at the local Social Security office, plus the fact that the local office hires case workers to answer such public inquiries, belie that assumption without proof to the contrary. No such proof is in the record. Therefore, the finding of the Secretary that plaintiff was not without fault must be reversed.

Because the Secretary found the plaintiff not "without fault," he considered it unnecessary to determine whether requiring repayment either would "defeat the purpose of Title II" or would be "against equity or good conscience."[15] Since the determination that plaintiff was not "without fault" is reversed, the issue relating to recovery of overpayments must be remanded to the agency for a determination of this unresolved issue. Should the Secretary find for plaintiff, plaintiff may keep the overpayments, and the issue of whether plaintiff was "disabled" and thereby entitled to the payments will be irrelevant. However, if the Secretary rules against the plaintiff, the Secretary must again decide whether plaintiff was "disabled," since the Court has determined that the Secretary made an er-

ror of law in interpreting the statutory definition of "disability." If the Secretary needs to decide the issue of entitlement, he should include in his determination the issues of whether plaintiff satisfied the five-month waiting period requirement and, if so, whether plaintiff was entitled to a trial work period. If plaintiff desires, the Secretary should also decide whether plaintiff has been eligible for disability payments since March, 1977, when benefits were last paid.

For the reasons stated:

1. The finding of the Secretary that plaintiff was not without fault is hereby REVERSED.

2. The finding of the Secretary that plaintiff has never been entitled to disability benefits is hereby REVERSED because of an erroneous interpretation and application of law.

3. This case is REMANDED to the Secretary for a determination of the issue of whether recovery by the Government would defeat the purpose of Title II or be against equity or good conscience.

4. If the Secretary decides against plaintiff on the aforementioned issue, he is ORDERED to consider whether, applying the definition of "disability" in accordance with this opinion, plaintiff has been "disabled" and entitled to disability benefits at any time between October 9, 1975, and March, 1977.

5. If plaintiff so requests, the Secretary is further directed to consider whether plaintiff has been "disabled" and entitled to disability benefits at any time since March, 1977.

14. A person who reads the Social Security Act might reasonably conclude that a disabled person, after the five-month waiting period, is immediately entitled to a period of trial work during which his entitlement to benefits will not be endangered. *See* notes 12 and 13 *supra*.

15. "Defeat the purpose of Title II" is defined by the Secretary as "to deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508 (1977). Since plaintiff in July, 1977 stated his total monthly income as $628 and his total monthly expenses

as $914.27, repayment of the benefits might well defeat the purposes of Title II—but whether it would is a matter that the Secretary must ultimately determine. "Against equity and good conscience" means that repayment would be inequitable if the claimant has relinquished a valuable right or changed his position for the worse because of a notice of payment or because of an incorrect payment. In reaching this determination, the Secretary does not consider financial circumstances. *Id.* § 404.509.