expiration of the five-month waiting period and award of benefits, in contrast to another claimant who filed in a busier or less efficient office. Claimants could be discouraged from working prior to an adjudication, and, under SSR 82-52, they would be forced to remain idle for at least one year. This situation would be inconsistent with the trial work period policy to encourage people to return to work as soon as possible.

*Newton*, 92 F.3d at 694 (citation omitted).

In summary, we hold that Salamalekis was eligible for a trial work period beginning March 2, 1992, because the five-month waiting period had expired and his impairment was still expected to last 12 months as of that date. In so holding, we reject the agency's contrary position in SSR 82-52 as inconsistent with Congress's unambiguously expressed intent.

### IV.

For these reasons, we **REVERSE** and **REMAND** to the district court with instructions to return this case to the Commissioner for a recalculation of the overpayments owed by Salamalekis, in accordance with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0238P (6th Cir.)
File Name: 00a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MANUEL G. SALAMALEKIS,
          *Plaintiff-Appellant,*

                                    No. 99-3588
          *v.*

COMMISSIONER OF SOCIAL
SECURITY,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-01153—David S. Perelman, Magistrate Judge.

Submitted: April 26, 2000

Decided and Filed: July 20, 2000

Before: RYAN and BOGGS, Circuit Judges; DUGGAN, District Judge.

---

\* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

### COUNSEL

---

**ON BRIEF:** Ramona E. Paradise, U.A.W. - GM LEGAL SERVICES PLAN, Brooklyn Heights, Ohio, for Appellant. Suzanne Duman, SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, REGION V, Chicago, Illinois, for Appellee.

---

### OPINION

---

RYAN, Circuit Judge. The Commissioner of Social Security seeks to recover from the plaintiff, Manuel G. Salamalekis, alleged overpayments of disability insurance benefits.

The Social Security Administration (SSA), applying Social Security Ruling 82-52, found that Salamalekis was not entitled to two years' worth of monthly benefit payments he received from the SSA. The SSA reasoned that Salamalekis was never "disabled" because he returned to work within 12 months of the onset of his impairment, before the agency had awarded benefits, and was not entitled to a "trial work period." A magistrate judge, acting in lieu of the district court, upheld the SSA's demand for repayment of the benefit amounts mistakenly paid to Salamalekis.

Our duty is to decide whether Salamalekis was entitled to a "trial work period" under the Social Security Act; if he was, he would be entitled to keep at least some of the benefits he received. Because we believe that Salamalekis satisfied the statutory prerequisites for a trial work period, we reverse the district court's judgment and remand for a recalculation of the overpayments Salamalekis owes.

While we cannot accept the SSA's position in SSR 82-52, it is interesting to note that SSR 82-52 itself partially undercuts the agency's reasoning. Although the SSA urges a retrospective standard for determining Salamalekis's disability, it has *not* taken the position that a claimant can never be entitled to a trial work period if he returns to work within 12 months of impairment onset and after the waiting period expires. Rather, the agency maintains that entitlement to the trial work period under these circumstances depends on *the agency's* conduct—*i.e.*, whether the agency has awarded benefits. According to the agency, a trial work period is permitted after the agency awards benefits, but not before. Neither the Act's definition of "disability" nor the trial work period provision supports this view. In effect, the SSA is attempting to add a prerequisite to trial work eligibility, contravening Congress's unambiguous intent.

We are hardly alone in our view that SSR 82-52 is inconsistent with the plain language of the Social Security Act. The Seventh, Eighth, and Tenth Circuits have also held that a claimant is entitled to a trial work period if the waiting period has expired and the claimant's impairment is expected to last for 12 months, regardless of whether the agency has made an award determination and regardless of whether the impairment has actually lasted 12 months. *See Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996); *Walker v. Secretary of Health and Human Servs.*, 943 F.2d 1257 (10th Cir. 1991); *McDonald v. Bowen*, 818 F.2d 559 (7th Cir. 1986). We are unaware of a single federal appeals court that has upheld SSR 82-52 as a valid interpretation of the Act. And while policy considerations are irrelevant where the statute is unambiguous, as in this case, we agree with the Eighth Circuit's observation that

> conditioning trial work periods upon [the agency's] prior [adjudication of disability] would subject claimants to the vagaries of the administrative office in which the claim was filed. An individual whose claim is efficiently processed might be able to begin trial work after

*Mullis* is inapposite. Mullis suffered injuries in an auto accident in 1978 and underwent surgery in 1979. In 1983, he worked from approximately February 28 to August 5. In November 1984, Mullis suffered a heart attack, and he underwent elective bypass surgery in January 1985. He applied for disability benefits on December 26, 1984, claiming that his disability began on March 15, 1981. *Mullis*, 861 F.2d at 992. The SSA denied the application on the ground that Mullis was not disabled since he had participated in gainful employment since the onset of impairment. The district court reversed, holding that the period worked in 1983—before plaintiff filed his benefits application—was a trial work period that did not defeat plaintiff's disability claim. *Id.* We reversed the district court's judgment, reasoning that

> there can be no "trial work period" before a claimant files for benefits because a "trial work period" only applies after a person has been adjudged disabled, in order to permit efforts to resume work without jeopardizing benefits if the effort failed. Since Mullis has never been adjudged disabled, strictly speaking, the district court was incorrect in its characterization of Mullis's 1983 work period as a "trial work period."

*Id.* at 993 (citations omitted).

Despite the somewhat broad language in *Mullis*, we do not interpret the opinion as governing this case. *Mullis* simply applied the rule, which is clearly expressed in the statute, that a claimant cannot be deemed "disabled" and eligible for a trial work period before filing a benefits application. *See* 42 U.S.C. § 423(a)(1)(C). Unlike Mullis, Salamalekis had applied for benefits before he began his trial work period. To the extent that *Mullis*'s language suggests a broader holding, we interpret that language as *dicta*, not binding precedent. *See United States v. Burroughs*, 5 F.3d 192, 194 (6th Cir. 1993).

**I.**

Salamalekis stopped working for his employer, Ford Motor Company, on approximately April 24, 1991, due to a heart condition and Parkinson's Disease. He was 55 years old. On October 1, 1991, he applied for Social Security disability insurance benefits, claiming that he had been disabled since April 24.

On March 2, 1992, less than a year after the onset of his impairment, Salamalekis returned to work at Ford. An internal SSA document demonstrates that Salamalekis promptly notified the agency, no later than March 11, 1992, of his return to work. On the same day that Salamalekis returned to work, the SSA determined he was entitled to receive disability insurance benefits. Although a copy of the award notice is not in the record, it is undisputed that the notice was sent to Salamalekis on March 8, 1992. The SSA claims it was unaware that Salamalekis had returned to work when it determined his eligibility for benefits, and Salamalekis has not disputed this claim.

In May 1992, the SSA notified Salamalekis that his claim would be reviewed in November 1992 when his "9th month of trial work" would end. He continued to work and to receive benefits for approximately the next two years. On March 25, 1994, *two years after its benefits award*, the SSA notified Salamalekis that it intended to revise its initial award determination based on the evidence in his file. The SSA's letter explained that Salamalekis was never disabled because he returned to work on March 2, 1992, prior to the agency's award of benefits and less than 12 months after the onset of his impairment. Although the evidence upon which the agency relied—Salamalekis's return to work—was over two years old, the SSA has offered no explanation to Salamalekis or this court for its long delay in notifying the plaintiff of a problem with his eligibility. The agency issued a formal redetermination within a couple of weeks, ceased paying

benefits, and demanded that Salamalekis repay $30,080.20 in alleged overpaid benefits.

Salamalekis appealed the determination within the agency. He argued that he was entitled to a trial work period beginning in March 1992 and that the agency could not consider his work during this period as evidence of substantial gainful activity demonstrating that he was not disabled. An administrative law judge (ALJ) affirmed the agency's decision. The Appeals Council denied review of the ALJ's decision, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.

The plaintiff then sought judicial review of the agency decision in federal district court, pursuant to 42 U.S.C. § 405(g). The parties consented to the magistrate judge's decision as the final judgment. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The magistrate judge affirmed the SSA's determination.

## II.

We must affirm the SSA's determination unless the agency failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). When reviewing the agency's interpretation of the Social Security Act, we will "give effect to the unambiguously expressed intent of Congress." *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). In other words, "[w]here the statute is clear, the agency has nothing to interpret and the court has no agency interpretation to which it may be required to defer." *Dixie Fuel Co. v. Commissioner of Soc. Sec.*, 171 F.3d 1052, 1064 (6th Cir. 1999). If, on the other hand, the Act is ambiguous, we will defer to the SSA's reasonable statutory construction. *See Sullivan v. Everhart*, 494 U.S. 83, 89 (1990); *Royal Geropsychiatric Servs., Inc. v. Tompkins*, 159 F.3d 238, 244 (6th Cir. 1998).

conclude that a claimant less motivated than plaintiff here would be sorely tempted to sit out the full twelve months if he knew that the law imposed such a forfeiture for an earlier return to gainful activity.

*Id.* at 835.

The SSA argues that *Sierakowski* is distinguishable because in that case the agency was aware of the plaintiff's return to work when it awarded benefits. The agency maintains that in this case, in contrast, it was without evidence of Salamalekis's return to work when it determined that he was disabled and awarded benefits. The fallacy in the SSA's position is that it incorrectly assumes that the agency properly could consider Salamalekis's return to work in determining whether he was disabled. Salamalekis had not recovered completely from his impairment when he returned to work; indeed, his duties were restricted due to his physical condition. As the agency itself found, Salamalekis's impairment was *expected* to last for 12 months as of March 2. This finding is not invalidated by Salamalekis's effort to return to work. The agency's proper finding that Salamalekis was eligible for benefits on March 2 precluded the agency from considering the return to work when it reevaluated whether Salamalekis was disabled. The agency did not render its disability determination on incomplete evidence.

The SSA also maintains that Salamalekis's position is inconsistent with this court's interpretation of the Act in *Ernst v. Commissioner of Social Security*, No. 94-3755, 1995 WL 696763 (6th Cir. Nov. 21, 1995) (unpublished disposition), and *Mullis v. Bowen*, 861 F.2d 991 (6th Cir. 1988). We disagree. *Ernst* is factually distinguishable because the agency in that case never found that the plaintiff was eligible for benefits, and in any event, *Ernst* is not binding precedent because the opinion is unpublished. *See In re Van Dresser Corp.*, 128 F.3d 945, 948 (6th Cir. 1997); 6 Cir. R. 206.

issue, however, because we hold that Salamalekis was entitled to a trial work period regardless of whether he returned to work before or after the agency's "award" of benefits.

According to the plain language of the Act, an individual may take advantage of a trial work period once he becomes "entitled to" disability insurance benefits. 42 U.S.C. § 423(a). Section 423(a)(1) establishes five prerequisites for entitlement to benefits, and Salamalekis satisfied all of them when he returned to his job at Ford. He was insured for disability insurance benefits; he was below retirement age; he filed an application for benefits; the five-month waiting period had expired; and he was under a disability.

We reject the SSA's position that Salamalekis was not under a disability given his return to work within 12 months of the onset of his impairment. This position ignores the complete definition of "disability" under the Act, which covers not only those impairments that *actually* last 12 months, but also those impairments *expected* to last 12 months. At the time Salamalekis returned to work on March 2, 1992, his impairment was ongoing and was expected to last for 12 months, and the SSA so found. A claimant who meets Congress's prospective standard for "disability" cannot be denied benefits based on hindsight. *See Sierakowski v. Weinberger*, 504 F.2d 831 (6th Cir. 1974).

> That the reasonably expected did not subsequently occur should, in our view, be treated as the shared good fortune of both the government and the claimant. It does not destroy the validity of the condition for eligibility, which we hold to be the existence of expectancy itself, independent of its fulfillment.
> We recognize that the construction urged by the [agency] results perhaps in more certainty and is thus easier of application, but this does not . . . justify a departure from [the clearly expressed] Congressional intent. Furthermore, that construction tends to penalize good faith and diligence. It takes little imagination to

### III.

Salamalekis contends that he satisfied the definition of "disabled" under the Social Security Act and was entitled to a nine-month trial work period beginning with his return to work in March 1992, plus a three-month reentitlement period. He claims, therefore, that he was entitled to receive disability benefits from October 1991 through March 1993 and that the overpayment he owes should be reduced by the amount of the benefits he received during this period. Because Salamalekis does not challenge the agency's authority to reopen its initial disability determination almost two years after the fact, we assume for purposes of this appeal that the agency did not exceed its authority in doing so.

The Act provides that an individual is "entitled to" disability insurance benefits for each month after a five-month waiting period expires, if the individual: (1) is insured for disability insurance benefits; (2) is below retirement age; (3) has filed an application for benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1). For purposes of this case, the waiting period is defined as five consecutive calendar months throughout which the applicant has been under a disability. *Id.* § 423(c)(2)(A). "Disability" means: "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A).

Notwithstanding the definition of "disability," the Act permits claimants to receive disability insurance benefits for a "period of trial work" of up to nine months. *Id.* §§ 422(c), 423(a). The trial work period begins in the month that the person "becomes *entitled to* disability insurance benefits." *Id.* § 422(c)(3) (emphasis added). The trial work period ends at the earlier of nine months after the period begins or the month in which the disability ceases. *Id.* § 422(c)(4). The Act prohibits the SSA from considering work rendered during a

trial work period in determining whether the individual's "disability has ceased in a month during such period." *Id.* § 422(c)(2). "However, after the trial work period has ended [the agency] will consider the work [the claimant] did during the trial work period in determining whether [the claimant's] disability ended at any time *after* the trial work period." 20 C.F.R. § 404.1592(a) (emphasis added). A nine-month trial work period may be followed by a 15-month reentitlement period during which a claimant may continue working and may receive benefits for up to three months. *Id.* § 404.1592a.

The trial work period is designed to permit a claimant to "test [his] ability to work and still be considered disabled." *Id.* § 404.1592(a). The SSA's regulations provide the following criteria for determining eligibility for a trial work period:

   (d) *Who is and is not entitled to a trial work period.* (1) Those who are receiving disability insurance benefits . . . generally are entitled to a trial work period.

   (2)  You are not entitled to a trial work period if—

   (i)   You are entitled to a period of disability but not to disability insurance cash benefits; or

   (ii)  You are receiving disability insurance benefits in a second period of disability for which you did not have to complete a waiting period.

*Id.* § 404.1592(d).

The SSA implicitly concedes that its regulations, as currently drafted, do not speak to the precise scenario presented in this case. However, the agency's interpretation of the trial work provision is not found only in its regulations. The SSA has issued a social security ruling that is directly on point. Social Security Ruling 82-52 provides that when an applicant's return to work "demonstrating ability to engage in [substantial gainful activity] occurs before approval of the

award and prior to the lapse of the 12-month period after onset, the claim must be denied." On the other hand, when an individual whose disability is established on the basis of expected duration of impairment returns to work *after* a benefits award but within 12 months of impairment onset, SSR 82-52 provides that benefits should be terminated *subject to* the possible entitlement of the individual to a trial work period. The prior award will not be reversed under this circumstance. SSR 82-52; *see also* Social Security Program Operations Manual System (POMS) DI 42001.015(C); POMS DI 24010.001. In 1995, the agency proposed an amendment to its regulations to incorporate its position expressed in SSR 82-52. Determining Disability and Blindness; Substantial Gainful Activity Guides, 60 Fed. Reg. 12166, 12168, 12173 (1995) (to be codified at 20 C.F.R. § 404.1592(d)(2)) (proposed Mar. 6, 1995). The agency has never finalized this proposed rule.

The SSA urges us to apply SSR 82-52 and hold that Salamalekis was never disabled because he successfully returned to work before the award of disability benefits and before his impairment had lasted 12 months. If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR. *See Garcia v. Secretary of Health and Human Servs.*, 46 F.3d 552, 559 (6th Cir. 1995). Here, however, no deference is due because we find SSR 82-52, and the agency's position in this case, to contradict the plain language of the governing statute, 42 U.S.C. § 422(c).

At the outset, we note that it is unclear whether SSR 82-52's reference to the "award" of benefits refers to the date of the agency's internal award determination or its notice of that determination to the claimant. If we were to accept the agency's position in SSR 82-52, our determination of the date of the "award" could affect the outcome of this case, given that Salamalekis returned to work on the same day the agency made its internal award determination but before the agency notified him of its determination. We need not resolve this