Reversed by Supreme Court opinion
filed 3/27/02.

Cert granted by Supreme Court on 9/25/01.

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

CLEVELAND B. WALTON,
Plaintiff-Appellant,

v.

No. 00-1016

KENNETH S. APFEL, COMMISSIONEROF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-98-339)

Argued: October 30, 2000

Decided: December 18, 2000

Before NIEMEYER and LUTTIG, Circuit Judges, and
Alexander WILLIAMS, Jr., United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Luttig wrote the opinion, in which Judge Niemeyer and
Judge Williams joined.

_____

COUNSEL

ARGUED: Kathryn Lee Pryor, CENTRAL VIRGINIA LEGAL AID
SOCIETY, INC., Richmond, Virginia, for Appellant. Eric P. Kress-
man, Assistant Regional Counsel, Office of the General Counsel,

SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** John M. Sacchetti, Regional Chief Counsel, Patricia M. Smith, Deputy Chief Counsel, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; Helen F. Fahey, United States Attorney, Debra J. Prillaman, Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

## OPINION

LUTTIG, Circuit Judge:

Cleveland B. Walton appeals the district court's grant of summary judgment affirming the decision by the Commissioner of the Social Security Administration that Walton was not entitled to disability insurance benefits and supplemental security income under the Social Security Act. The Commissioner's denial of benefits, and the district court's affirmance of that decision, were pursuant to a regulatory interpretation of the Social Security Act by the Social Security Administration, which interpretation provides that a return to work prior to the lapse of a 12-month period after onset of disability and prior to the adjudication of disability precludes a finding that a claimant is disabled and does not allow the award of a trial work period. We hold that the agency interpretation upon which the district court and the Commissioner relied clearly contravenes the relevant, and unambiguous, provisions of the Social Security Act. See 42 U.S.C. §§ 423(d)(1)(A); 422(c)(3). Accordingly, we reverse the judgment of the district court granting summary judgment to the Commissioner and denying summary judgment to Walton, except with regard to the district court's conclusion that Walton began "substantial gainful activity" ("SGA")[1] in October 1995, when his earnings exceeded $500, which latter holding we affirm.

_____

[1] Substantial gainful activity is "work activity that is both substantial and gainful," and that involves "doing significant physical or mental activities." 20 C.F.R. §§ 404.1572, 416.972. According to the statutory guidelines, earnings between $300 and $500 per month may be deemed SGA, while earnings in excess of $500 per month create a rebuttable pre-

I.

Cleveland B. Walton ("Walton"), a college graduate in his mid-
thirties with a history of psychological problems, was diagnosed with
schizophrenia after a six-day period of hospitalization in March 1995.
He applied for disability insurance benefits ("DIB") and supplemental
security income ("SSI") under the Social Security Act ("Act") on
April 12, 1995, based on his claimed mental impairment -- schizo-
phrenic disorder with associated depression. His application was
denied initially and upon reconsideration.

After an evidentiary hearing on July 10, 1996, an Administrative
Law Judge ("ALJ") concluded that Walton was disabled by his mental
impairment; at the request of the ALJ, Dr. Elliott J. Spanier, a board-
certified psychiatrist, reviewed appellant's medical records and
opined that Walton suffered from schizophrenic disorder with psy-
chotic features, that the impairment met the criteria of a listed impair-
ment,[2] and that the impairment had lasted 12 months.

Prior to his hearing before the ALJ, Walton advised the ALJ that
he had worked at Food Lion from May 1995 until December 10,
1995, for five or six hours a day, and that he had begun working full-
time at the same job on December 10, 1995. Based on this informa-
tion, the ALJ denied Walton a trial work period [3] because Walton had
_____
sumption of SGA. 20 C.F.R. §§ 404.1574(b)(2)(vii), 416.974(b)(2)(vii);
see also Payne v. Sullivan, 946 F.2d 1081, 1083 (4th Cir. 1991). More-
over, the Commissioner considered the nature of appellant's work and
his ability to do that work, in addition to his earnings. In this case, the
regulations defining substantial gainful activity are reasonable, 42 U.S.C.
§ 405(a), the decision that appellant's October 1995 earnings were SGA
was supported by substantial evidence, and we affirm this part of the dis-
trict court's judgment.
[2] A listed impairment is an impairment "considered severe enough to
prevent a person from doing any gainful activity." 20 C.F.R.
§ 404.1525(a).
[3] A trial work period permits qualified claimants to test their ability to
work for up to nine months and still be considered disabled. See 42
U.S.C. § 422(c); 20 C.F.R. § 404.1592.

demonstrated the capacity for sustained work since May 1995, and because his disability ceased when he began working full-time.

Instead, the ALJ held that Walton was entitled to benefits pursuant to a period of disability that commenced on the amended onset date of his impairment, October 31, 1994 -- the date his employment as an in-school suspension teacher was terminated -- and ended on December 10, 1995 -- the date Walton started to work full-time at Food Lion.

Subsequently, the Social Security Administration (SSA) determined that Walton may have begun SGA within twelve months of his onset date. Based on agency policy, Walton was not disabled, and was not entitled to benefits, if he had returned to work that constituted SGA within twelve months of his disability onset date and prior to adjudication of his claim, even if his impairment had lasted or was expected to last for a continuous period of not less than 12 months. Consequently, the case was remanded to the ALJ to assess when Walton began SGA.

Substantial evidence that Walton remained mentally impaired was presented at the second hearing. However, the ALJ did not reach the issue of impairment because he concluded that Walton returned to SGA in October 1995, when his earnings from his part-time work as a grocery store cashier and stocker exceeded $500. **4** And, because Walton was not unable to engage in SGA for a continuous period of at least twelve months from his disability onset date, the ALJ determined that he was not disabled and not entitled to a trial work period, and therefore denied him benefits.

Walton sought review of the ALJ's decision, which stands as the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The district court adopted the proposed mem-

_____

**4** Under the Act's sequential evaluation process, the disability inquiry will end at the first step, and the claimant will be found not disabled, irrespective of impairment, if he has engaged in SGA. 20 C.F.R. §§ 404.1520(b), 416.920(b). As discussed infra at 8, SGA during a trial work period is ignored, and will not end the evaluation process. 42 U.S.C. § 422(c)(2).

4

orandum opinion of the magistrate judge and granted summary judgment to the Commissioner, holding that the Commissioner's decision that Walton engaged in SGA in October 1995 and was not disabled and entitled to benefits, was supported by substantial evidence, and that Walton was not entitled to a trial work period absent a finding of disability and entitlement to benefits. This appeal followed.

II.

Walton does not deny that he worked in October 1995. Rather, he claims, inter alia, that his work in October 1995 did not constitute SGA[5] and that, even if the work did constitute SGA, the district court improperly relied upon it because that SGA was part of a trial work period and, as such, could not be used as evidence that he was not disabled. The Commissioner does not dispute that Walton suffered from a mental impairment, nor does he dispute that the impairment lasted for a continuous period of at least 12 months. Instead, the Commissioner asserts that the district court properly upheld the denial of benefits because, pursuant to the Act and agency policy, Walton was not under a disability when he engaged in SGA during October 1995, prior to the lapse of twelve months from his disability onset date and prior to adjudication of his claim. Further, the Commissioner claims that because Walton was not disabled, he was not entitled to a trial work period.

The Commissioner insists that his position is based on the plain language of the statute and that, even if the language of the Act were susceptible to another interpretation, deference is owed to the agency's interpretation of the Act. Appellee's Br. at 24. This interpretation is expressed in Social Security Ruling (SSR) 82-52 and Notice of Proposed Rule-making, 60 Fed. Reg. 12166 (March 6, 1995) ("NPRM").[6]

While we recognize Chevron deference where such deference is due, see generally Chevron U.S.A., Inc. v. Natural Resources Defense

_____

[5] We affirm that portion of the district court's opinion. See supra n.1.
[6] This proposed regulation (which reflects the position of SSR 82-52) became effective on August 10, 2000, and does not apply retroactively to Walton's case.

5

<u>Council, Inc.</u>, 467 U.S. 837 (1984), we nonetheless reject the Commissioner's judgment in this case. In the first place, agency interpretation of the Act is not appropriate because the language of the statute is clear and unambiguous. Moreover, even if interpretation were required, the Commissioner's interpretation -- which assumes either a duration period or adjudication requirement and does violence to the grammatical structure of the statute -- conflicts with the very statute it purports to elucidate. We are bound to reject such constructions. <u>Id</u>. at 843 & n.9.

Consequently, the district court's holding that Walton was not under a disability when he engaged in SGA prior to the lapse of twelve months from his onset date and prior to adjudication of his claim, and its holding that Walton was not entitled to a trial work period, are reversed.

A.

Beyond question, the statutory language speaks clearly to the issue of whether an individual can be under a "disability," even though he engaged in SGA prior to the expiration of a twelve-month period from his disability onset date and prior to the adjudication of his disability and an award of benefits. The statutory language is unambiguous, requires no agency interpretation, and leaves no doubt that neither a duration requirement for the inability to engage in substantial gainful activity nor a requirement that the benefits have been "awarded" or adjudicated, exists. Rather, the relevant provision, 42 U.S.C. § 423(d)(1)(A), defines "disability" simply as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition to the facial clarity of the language, the grammatical structure and logic of the statute further compel the conclusion that the clause, "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," refers to the impairment, not to the inability to engage in

6

SGA; the clause manifestly does not modify "substantial gainful activity."

In the first place, based solely on grammar and sentence structure, the clause modifies the prepositional phrase "by reason of any medically determinable physical or mental impairment." Additionally, a single referent for the <u>entire</u> adjectival phrase must exist. Thus, as a matter of pure logic, it is clear that the duration clause <u>must</u> modify impairment, and only impairment, because to hold otherwise would lead to the absurd construction dictated by the Commissioner's interpretation, that "[d]isability is the inability to engage in substantial gainful activity . . . which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Obviously it is the impairment, and not the SGA, that Congress believed could lead to death, and it is thus the impairment, and not the SGA, which is subject to the"not less than twelve months" requirement. We decline to construe it otherwise.

Accordingly, we hold that a claimant whose impairment was "expected to result in death," or which "lasted" or "was expected to last" for a continuous period of not less than twelve months may be disabled, even if the inability to engage in substantial gainful activity does not cause death or actually persist for twelve months. 42 U.S.C. § 423(d)(1)(A). Moreover, such individual <u>becomes entitled</u> to disability insurance benefits, if under a disability, for each month <u>after the five-month waiting period</u> imposed by section 423(c)(2)**7** if the individual (1) is insured for disability benefits; (2) is below retirement age; and (3) has filed an application for benefits. 42 U.S.C. § 423(a).

In this case, the ALJ found in the first hearing that Walton was disabled and had an impairment that had lasted for twelve months from the disability onset date in October 1994. It is further undisputed that Walton did not engage in a successful work attempt until May 1995, two months after the five-month waiting period, and did not engage

_____

**7** There is no entitlement to receive benefits until after this waiting period, which refers to the earliest period of five consecutive calendar months "throughout which the individual with respect to such application is filed has been under a disability." 42 U.S.C.§ 422(c)(2); <u>see also</u> 42 U.S.C. § 423(a).

7

in SGA until October 1995, well after the five-month waiting period had elapsed. Consequently, Walton met the statutory prerequisites for entitlement to disability insurance benefits.

Walton's claim that he was entitled to a trial work period is likewise affirmed by the statutory language. For, whether Walton is entitled to a trial work period, in light of his return to part-time work in May 1995 and SGA in October 1995, is conclusively settled by the determination that Walton was disabled and entitled to disability benefits after the five-month waiting period, i.e., beginning in April 1995.

Contrary to the Commissioner's position, the statute allows a trial work period to begin prior to twelve months from the disability onset date, and before benefits are granted. Unambiguously, the statute provides that a "period of trial work . . . shall begin with the month in which [the claimant] becomes entitled to disability insurance benefits." 42 U.S.C. § 422(c)(3) (emphasis added). And, as discussed supra, Walton met the requirements of 42 U.S.C.§ 423(a) and was entitled to disability insurance benefits as of April 1995.

Under the statute, "any services rendered by an individual during a period of trial work will be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period." 42 U.S.C. § 422(c)(2).[8] Thus, given that Walton's trial work period precludes consideration of the October 1995 SGA, Walton meets even the Commissioner's extra-statutory requirements for a finding of disability, because no SGA during the period of twelve months from his disability onset date, October 31, 1994, could have been considered.

Consequently, in light of our holdings that Walton was under a "disability," "entitled to disability benefits," and "entitled to a trial work period," we must also hold that the district court's consideration of the October 1995 SGA as evidence that Walton had engaged in SGA prior to the expiration of twelve months from his disability onset date was in contravention of the Act.

---

[8] Once the trial work period is over, the agency can consider the work done during the work period in determining whether the disability has ended after the work period. 20 C.F.R. § 404.1592(a).

8

B.

Even if the statute we interpret herein were ambiguous, and thus susceptible to interpretation, we would nonetheless reject as unreasonable the Commissioner's contrary interpretation, which rests on the premise that it is the "inability to engage in any substantial gainful activity" which must "last" or "be expected to last for a continuous period of not less than 12 months." And, it is based on this supposition that the Commissioner concludes that the definition of disability -- and a prerequisite for entitlement to a trial work period -- includes the requirement that either the impairment must have prevented SGA for a period of no less than twelve months or the claim must have been adjudicated and benefits awarded. See 60 Fed. Reg. 12166, 12168; SSR 82-52. It is clear, however, that the Commissioner's position is directly belied by the language, structure, and grammar of 42 U.S.C. § 423(d)(1)(A).

For, to obtain the outcome the Commissioner desires, one is required in the first instance to separate a single adjectival clause in section 423(d)(1)(A) -- "which can be expected to result in death or has lasted or is expected to last in excess of twelve months" -- so that "which can be expected to result in death" modifies only "impairment," while "which has lasted or can be expected to last" modifies both impairment and "inability to engage in substantial gainful activity." There is no mode of statutory construction which allows such. As discussed supra at 6-7, parts of a single adjectival phrase cannot modify different antecedents. The only logical referent for both constituents parts of the clause is "impairment."

We further conclude that the agency's interpretation is contrary to the clear statutory language in other respects. For example, while the Commissioner accepts "an award of benefits" as an alternate requirement to being unable to engage in SGA for a period of twelve months, "an award of benefits" is nowhere to be found in the statutes that define "disability" and outline the parameters of "trial work period." Additionally, though the Commissioner seeks to make the trial work period, as well as a finding of disability, contingent upon either the duration of SGA or adjudication,[9] see 60 Fed. Reg. 12166, 12168;

_____

[9] The Commissioner's "interpretation" mandates that a trial work period may "not be awarded when a claimant performs work demonstrat-

9

SSR 82-52, the "shall begin" language in 42 U.S.C. § 422(c)(3) is conditioned <u>only</u> on being "eligible to receive benefits," as determined under section 423(a)(1). The conflict between the statute and the agency interpretation is both apparent and significant.

The Commissioner seeks to reconcile this apparent tension by reference to the use of different verb tenses within 42 U.S.C. § 423(d)(1)(A). We are told that the Congress included the "expected to last" language in section 423(d)(1)(A) so that the SSA can "adjudicate disability claims without having to wait 12 months from the alleged onset of disability, rather than to permit claims to be allowed in the face of evidence that the claimant's impairment did not prevent substantial gainful activity for 12 continuous months." 60 Fed. Reg. 12166, 12168. In support of this position, appellee points to the fact that in its "definition of `disability,' Congress used two different verb tenses to provide for the fact that the Agency would decide claims at two different times relative to the onset of a claimant's disability." Appellee's Br. at 14.

If for no other reason, juxtaposition of this "verb tense" analysis with the timing of agency adjudication exposes its weakness, and makes the argument unpersuasive as a statutory matter. As an initial matter -- and significantly -- neither section 423(a)(1) nor section 423(d)(1)(A) even <u>mentions</u> adjudication as a prerequisite to "disability" or "entitlement to disability benefits." Second, no part of the Act of which we are aware differentiates between claims adjudicated within twelve months, and claims adjudicated after twelve months, a distinction upon which the Commissioner's verb tense analysis rests. Lastly, under the Commissioner's interpretation, a finding of disability, or entitlement to benefits or a trial work period, would be determined, in part, by when the Commissioner adjudicated a claim; we decline to make findings and entitlements of such nature turn upon the vagaries of agency efficiency.

_____

ing the ability to engage in substantial gainful activity within 12 months after the alleged onset of disability and prior to an award of benefits." J.A. 97.

10

In sum, the Commissioner's position, grounded in SSR 82-52 and the NPRM, is both in actual conflict with the statutory language and unreasonable, and our duty is therefore clear -- we must reject the agency interpretation and apply the statute as enacted.**10**

For the above reasons, those portions of the judgment of the district court affirming the Commissioner's conclusions that Walton is not disabled based on his return to SGA within twelve months of his onset date and is not entitled to a trial work period are reversed. However, that portion of the district court's judgment affirming the Commissioner's conclusion that appellant's work in October 1995 was SGA is affirmed. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

**10** We join no fewer than four other circuit courts of appeal in the assessment that the agency's position contradicts the plain language of the governing statute. See Salamalekis v. Commissioner of Social Security, 221 F.3d 828, 832 (6th Cir. 2000) (agency position and SSR 82-52 an invalid interpretation of the Act); Newton v. Chater, 92 F.3d 688, 693-94 (8th Cir. 1996) (trial work period starts in the month that disability entitlement begins, i.e., after five-month waiting period; agency ruling is inconsistent with the statutory provisions); Walker v. Director, Health and Human Services, 943 F.2d 1257, 1259-60 (10th Cir. 1991) (same); McDonald v. Bowen, 818 F.2d 559, 564 (7th Cir. 1987) (same).

11